Eric Baum NY#2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski NY#5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
        arozynski@EandBLaw.com

William A. Richards #013381
Alan S. Baskin #013155
Nicole C. Davis #020138
David E. Wood #021403
Leslie Ross #027207
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: brichards@baskinrichards.com
        alan@baskinrichards.com
        ndavis@baskinrichards.com
        dwood@baskinrichards.com
        lross@baskinrichards.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Barbara Irwin, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>City of El Mirage, Arizona, an Arizona municipality,<br><br>                              Defendant. | **Case No.**<br><br>**COMPLAINT** |

Plaintiff Barbara Irwin, by and through her undersigned counsel, Eisenberg & Baum, LLP (pro hac vice application to be filed), and Baskin Richards PLC, as and for her Complaint against the City of El Mirage, Arizona, hereby allege as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff is hard of hearing as she suffers from hereditary Sensorineural Hearing Loss, and requires an Assistive Listening System (ALS) to communicate effectively in large and sometimes small group settings.

2. ALS devices are often also referred to as Assistive Listening Devices (ALD) and for individuals like Ms. Irwin serve as amplifiers that bring sound into the ear. ALD's essentially separate sounds, and in particular speech, and improve what is generally known as the speech to noise ratio. ALD's are used by Plaintiff, and other similarly situated persons, because they address listening challenges by minimizing background noise, reducing the effect of distance between the sound source and the hard of hearing person, and override poor acoustics such as echo.

3. Defendant City of El Mirage discriminated against Plaintiff by refusing to provide necessary auxiliary aids and services despite her repeated requests for effective communication. Plaintiff brings this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* and its implementing regulation, 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; as well as the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*, and other state and federal common law rights.

4. Defendant has demonstrated and continue to repeatedly demonstrate through its interactions with Plaintiff that Defendant and Defendant's staff are not properly trained

2

regarding how to identify when auxiliary aids are required for effective communication with hard of hearing individuals, and when foregoing such auxiliary aids results in inadequate and ineffective communication for a hard of hearing individual.

5. Alternatively, Defendant has repeatedly demonstrated that Defendant does not maintain auxiliary aids at city court facilities, despite being put on notice that hard of hearing individuals require them for effective communication and despite signage displaying that such auxiliary aids are available. As a result of these failures, Plaintiff received services that were objectively substandard and inferior to the services provided to individuals who can hear.

6. Defendant's discrimination sends a message that it is acceptable for a municipality to adopt policies, procedures and practices that deprive hard of hearing individuals of the full opportunity to seek and obtain justice. Plaintiff brings this suit to address these discriminatory practices, obtain relief against further, future discrimination, and obtain relief for the damages caused by Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

7. Defendant City of El Mirage is a municipality within the State of Arizona that operates a City Court known officially as the City Court of the City of El Mirage, Maricopa County, State of Arizona ("City Court"). The City Court is responsible for adjudication of criminal misdemeanors, criminal and civil traffic violations, El Mirage City Code violations, Injunctions Prohibiting Harassment and Orders of Protection that occur within the El Mirage City Limits.

8. On information and belief, the City of El Mirage is the recipient of federal financial assistance.

9. The City of El Mirage's website states that the mission of the El Mirage City Court is "To serve the community by providing a dignified and professional forum for the efficient resolution of cases within the City jurisdiction." [*See* www.cityofelmirage.org/1111/City-Court (printed April 12, 2017)].

10. Plaintiff Barbara Irwin is an individual who has at all material times resided in

3

Maricopa County, Arizona. She is hard of hearing, and is substantially limited in the major life activity of hearing and is therefore considered an individual with a disability as defined under the ADA. Ms. Irwin participated in the open court process to address traffic tickets, where she was denied appropriate auxiliary aids and services for her disability despite repeated requests to facilitate effective communication between her and Defendants' employees and staff. Ms. Irwin's open court appearances occurred on April 13, 2016, and again on May 19, 2016.

11. Throughout all visits by Plaintiff to the El Mirage City Court, Defendant, by and through its staff, employees and/or agents, repeatedly denied Plaintiff accommodations necessary to ensure effective communication as required by law. Defendant's repeated denial of effective communication for Plaintiff includes denying Plaintiff's requests for auxiliary aids and/or denying that auxiliary aids were available. Instead of providing appropriate auxiliary aids, Defendant chose to do nothing at all or to force Plaintiff to rely on other forms of inadequate and ineffective communication, resulting in ineffective communication with Plaintiff.

## JURISDICTION & VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law. In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

13. Jurisdiction is properly exercised by this Court as pursuant to A.R.S. §12-821.01(A), Plaintiff served a Notice of Claim on Defendant City of El Mirage on September 6, 2016. Defendant City of El Mirage failed to respond to the Notice of Claim effectively denying Plaintiff's claims. A.R.S. § 12-821.01(E).

14. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, the parties all reside within this District, and the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

## STATEMENT OF FACTS

15. On or about the evening of January 7, 2016, Ms. Irwin was in her home located

at 15605 North 174th Avenue, Surprise, Arizona when a man came to her door. Ms. Irwin was not expecting visitors, and asked the man who he was. The man did not answer, and instead waved papers at Ms. Irwin, who told the man to leave the papers at her door. The man left without leaving the papers with Ms. Irwin.

16. On or about March 10, 2016, Ms. Irwin began receiving letters from the Arizona Department of Transportation ("ADOT"), Motor Vehicle Division ("MVD"), and Notices of Delinquent Account from the El Mirage City Court. The letters stated that action to suspend Ms. Irwin's license had been ordered against her driving privileges, informed Ms. Irwin that she was not entitled to a hearing, and stated that resolution of the action could be obtained by calling or taking the letter to El Mirage City Court. See attached Exhibit A. The notices stated that Ms. Irwin had failed to comply with a past court judgment and had outstanding balances due to the El Mirage City Court. See attached Exhibit B.

17. Ms. Irwin then went to the El Mirage City Court, with letters she had prepared explaining that she had never received service or any other documents. She delivered her letters and requested to see a judge in open court, to which court personnel denied. Court personnel then gave her an order denying a Motion to Set Aside Default.

18. At all times that Ms. Irwin was at the El Mirage City Court, signage noting the availability of auxiliary aids was prominently displayed.

19. After returning home, Ms. Irwin went through the materials she had received and submitted an online request for a hearing in response to the ADOT MVD traffic survival school order.

20. On April 11, 2016, Ms. Irwin attended a telephonic hearing on the traffic survival school order. During this hearing, Ms. Irwin learned that El Mirage City Court has open court and that she was entitled to see a judge. Her requirement to attend traffic school was extended until August 11, 2016.

21. On April 13, 2016, Ms. Irwin returned to the El Mirage City Court and submitted a motion to dismiss the three traffic citations she was given.

22. Ms. Irwin then attended open court before, on information and belief, Judge Pro

5

Tempore Denise Scammon.

23. Ms. Irwin asked Judge Pro Tempore Scammon for an ALD because of Ms. Irwin's pronounced hearing loss and the size, distances in, and acoustics of the court room. However, instead of granting Ms. Irwin's request, Judge Pro Tempore Scammon instructed Ms. Irwin to stand directly in front of her, and proceeded to question Ms. Irwin about her ability to hear.

24. Judge Pro Tempore Scammon then proceeded with the hearing without granting Ms. Irwin's request for auxiliary aids, inhibiting Ms. Irwin's ability to effectively participate in the legal process, preventing her from fully understanding the proceedings and the consequences attendant thereto and from asking questions at certain relevant times.

25. Ms. Irwin was frustrated, embarrassed and humiliated as a result of Judge Pro Tempore Scammon's actions and/or omissions.

26. On information and belief, Judge Pro Tempore Scammon set Ms. Irwin's matter for oral argument on the service of process issue, and instructed Ms. Irwin to post bond in the amount of all three citations.

27. Ms. Irwin then proceeded to the service window to follow what she believed to be the judge's instructions but was then told that there was no such thing as posting a bond.

28. On May 19, 2016, Ms. Irwin again attended open court. The judge was a judge other than Judge Pro Tempore Scammon.

29. When the judge started to speak, Ms. Irwin could not discern the sounds because of her hearing loss coupled with the size and acoustics of the court room.

30. Ms. Irwin raised her hand and, on information and belief, the bailiff noticed her and stopped everyone from speaking.

31. Ms. Irwin then indicated that she was hard of hearing and requested an amplification device. Ms. Irwin had observed that signage indicating the availability of ALDs was prominently displayed within the court room.

32. The judge and the court personnel then looked at each other and stated that they did not have such a thing.

33. The judge then instructed Ms. Irwin to approach the bench, and proceeded to

question Ms. Irwin about her ability to hear him as if to assess for himself Ms. Irwin's hearing ability.

34. Ms. Irwin was again embarrassed, humiliated and frustrated from being singled out and made a spectacle.

35. On information and belief, during the hearing, James Harder, an officer of Maricopa County Superior Court and process server in the matter, testified from the seated tables. Ms. Irwin remained standing, as required by the Judge, in the front of the court room.

36. Mr. Harder proceeded to play a recording of the alleged service of process on Ms. Irwin. Because Ms. Irwin could not hear the recording and instead of providing the auxiliary aid Ms. Irwin had requested or another means of effective communication, the judge instructed Mr. Harder to bring the recording device up to the front of the court room and required Ms. Irwin to hold her ear to the device so she could hear it.

37. Ms. Irwin was still unable to discern the contents of the recording but the judge resumed his questioning of Ms. Irwin nevertheless.

38. On May 20, 2016, Ms. Irwin returned to the City of El Mirage City Court to pay the fines. While there, court staff, whose first name on information and belief is Reginald, last name unknown, informed Ms. Irwin that she had a fourth ticket.

39. Ms. Irwin was unaware of the fourth ticket. She inquired why she had not been given information related to the citation the day prior. Ms. Irwin attempted to preserve her rights by filing a motion to set aside.

40. Ms. Irwin was faced with new information and a legal process that appeared to change before her eyes. She was overwhelmed, confused and scared. Ms. Irwin began to cry. Despite the prior denials of her request for an amplification device, Ms. Irwin asked, on information and belief, that Reginald once again supply her with an auxiliary aid in the form of an amplification device. Ms. Irwin also asked to see the judge.

41. Ms. Irwin's request for an auxiliary aid was again denied as was her request to see the Judge. Ms. Irwin was not allowed to appear in open court again.

42. Ms. Irwin's interactions with the City of El Mirage City Court staff, personnel

and agents actively interfered with Ms. Irwin's ability to seek and obtain justice, failed repeatedly to provide her effective communication, and in doing so, violated Ms. Irwin's federal and state protected rights.

43. The City of El Mirage City Court staff, personnel and agents' interactions with Ms. Irwin have also deterred Ms. Irwin from further participation in the open court process. Ms. Irwin fears that she will be mocked and again humiliated because of her disability.

44. As a result of the City of El Mirage City Court staff, personnel and agents' failure to provide Ms. Irwin effective communication as legally required, Ms. Irwin received services that were objectively substandard and inferior to the services provided to individuals who can hear during her visits at the City of El Mirage City Court. More, Ms. Irwin was made a victim of discriminatory conduct and comments and suffered an abuse of her rights as a disabled citizen by the City of El Mirage justice system.

45. The City of El Mirage by and through its staff, employees, agents and other personnel intentionally discriminated against Ms. Irwin with deliberate indifference to her communication needs during her court visits, causing her to endure humiliation, fear, anxiety and emotional distress. Their conduct is also evident of a failure to train employees and promulgate policies of non-discrimination against hard of hearing individuals thereby entitling Ms. Irwin to injunctive and declaratory relief, compensatory damages (including lost wages), and attorneys' fees and costs to redress the City of El Mirage's unlawful discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and AzDA, A.R.S. § 41-1492, *et seq*, as well as other state and common law causes of action.

**COUNT 1: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

46. Plaintiff repeats and realleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

47. At all times relevant to this action, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* has been in full force and effect and has applied to Defendant's conduct.

48. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, were in full force and effect and applied to the Defendant's conduct.

49. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of hearing. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

50. As an instrumentality of government, Defendant City of El Mirage is a local government entity subject to Title II of the ADA, and therefore precluded from discriminating against Plaintiff and other similarly situated individuals on the basis of her or their disability.

51. Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132.

52. Title II of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12132; *see also* 28 C.F.R. §§ 35.160.

53. Title II of the ADA further defines discrimination to include a failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. 42 U.S.C. § 12132; 28 C.F.R. § 35.160(b)(1).

54. The ADA and its implementing regulations provide that a public entity shall furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities, and requires that that the public entity, in choosing the type of auxiliary aid or service, ensure effective communication by considering the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 42 U.S.C. §12132; 28 C.F.R. § 35.160(b)(1), (2).

55. Pursuant to Title II of the ADA and its implementing regulations, in order to be

effective, the type of auxiliary aid or service provided by the public entity "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

56. Based on all of the foregoing allegations confirming the Defendant's treatment and interactions with the Plaintiff, Defendant discriminated against Plaintiff on the basis of her disability by: (1) denying Plaintiff an equal opportunity to participate in and benefit from the services of the City of El Mirage City Court; (2) failing to ensure adequate and effective communication through the provision of an auxiliary aid or service, namely the use of an assisted listening device; (3) failing to ensure adequate and effective communication by relying on other means of communication other than an assistive listening device; and 4) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such participation in and benefit from services to individuals with disabilities.

57. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or additional deaf or hard of hearing persons.

58. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12133 and/or common law.

**COUNT 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

59. Plaintiff repeats and realleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

60. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

61. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

62. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j). Accordingly, Plaintiff is an individual

with a disability as defined under the Rehabilitation Act.

63. At all times relevant to this action, Plaintiff was qualified to receive services through Defendant's facilities.

64. Upon information and belief, at all times relevant to this action, Defendant City of El Mirage has received federal financial assistance, and as government body, has been principally engaged in the business of providing court services including the adjudication of misdemeanors, criminal and civil traffic violations, El Mirage city code violations, injunctions prohibiting harassment and orders of protection that occur within the El Mirage city limits. Therefore, Defendant City of El Mirage qualifies, on information and belief, as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

65. Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

66. As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its staff, employees, agents and personnel operating within the local government facility, Defendant has discriminated against and continues to discriminate against the Plaintiff solely on the basis of her disability by denying Plaintiff meaningful access to the services, programs, and benefits the Defendant offers to other non-hard of hearing individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

67. As also set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its staff, employees, agents and personnel operating within Defendant's facility, Defendant further discriminated against the Plaintiff by relying upon ineffective and inadequate means of communications including verbal gestures, lip reading and the limited legal and procedural information Plaintiff could obtain without appropriate auxiliary aids or services.

68. Defendant's violation of its obligations and the Plaintiffs' rights under the

Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to the Plaintiff, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms. Upon information and belief Defendant's violations of its obligations and Plaintiff's rights may have also caused the exacerbation, increase, extension, or delay in the resolution of Plaintiff's driving privileges, which itself has also caused or could cause a loss in wages, increase in insurance costs and additional emotional harm, suffering and injury to Plaintiff.

69. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiff and other deaf or hard of hearing persons.

70. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

71. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

72. Defendant's actions and omissions resulting in harms to the Plaintiff were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiff under federal and state law and the substantial risk of serious and material harms to the Plaintiff. Therefore, to the extent the courts were to determine that punitive damages were recoverable under the Rehabilitation Act, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

**COUNT 3: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT**

73. Plaintiff repeats and realleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

74. At all times relevant to this action, the Arizonans with Disabilities Act, A.R.S. § 41-1492, *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

75. At all times relevant to this action, Plaintiff had substantial impairment to the

major life activity of hearing and is a qualified individual with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

76. At all times relevant to this action, Defendant City of El Mirage has been a local government operating the public facility at which Plaintiff was served thus making Defendant a public entity within the meaning of AzDA, A.R.S. § 41-1492(12).

77. The AzDA, A.R.S. § 41-1492.01(A), states that "[a]ll buildings and facilities that are used by public entities and that are leased or constructed in whole or in part with the use of state or local monies, the monies of any political subdivision of this state or any combination of these monies shall conform to title II of the Americans with disabilities act."

78. As discussed above, Title II of the ADA mandates that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." Title II of the ADA, and therefore AzDA, places an affirmative obligation on Defendant City of El Mirage and requires that Defendant take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. 28 C.F.R. § 35.160(b)(1); A.R.S. § 41-1492.01(A).

79. By its incorporation of the ADA, the AzDA instructs a public entity to furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities, and requires that that the public entity, in choosing the type of auxiliary aid or service, ensure effective communication by considering the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 42 U.S.C. § 12132, 28 C.F.R. § 35.160(b)(1), (2).

80. Pursuant to AzDA and the ADA, in order to be effective, the type of auxiliary aid or service provided by the public entity "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

13

81. As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its staff, employees, agents and personnel operating within its facility, Defendant has discriminated against and continues to discriminate against the Plaintiff solely on the basis of her disability by denying Plaintiff meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by failing and refusing to modify the City Court's policies, procedures and practices regarding reliance on ineffective and inadequate means of communication including lip reading, speaker phones, verbal gestures, face to face contact, and by refusing to provide auxiliary aids and services, specifically an assistive listening device necessary to ensure effective communication, in violation of the AzDA and the Plaintiff's rights thereunder.

82. Defendant's violation of its obligations and the Plaintiff's rights under the AzDA has caused substantial damages, suffering, loss and harm to the Plaintiff, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.  Upon information and belief, Defendant's violations of its obligations and Plaintiff's rights may have also caused the exacerbation, increase, extension, or delay in the resolution of Plaintiff's driving privileges, which itself has also caused or could cause a loss in wages, an increase in insurance costs and additional emotional harm, suffering and injury to Plaintiff.

83. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or additional deaf or hard of hearing persons.

84. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages and injunctive relief for the injuries and losses sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

85. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

# **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Arizonans with Disabilities Act;

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Plaintiff, meaningful access to and full and equal enjoyment in Defendant's City Court services or programs;

C. Order Defendant:

  i. to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Plaintiff and other similarly situated individuals who are deaf or hard of hearing by failing to provide effective communication within its City Court operations;

  ii. to develop, promulgate, implement and comply with a policy requiring that when a hard of hearing individual appears in an adjudicated or other court proceeding and requests the use of an auxiliary aid or service for effective communication, a fully equipped auxiliary aid or service will be provided as soon as practicable in all services offered by Defendant;

  iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are hard of hearing of their rights to effective communication under all applicable federal and state law;

  iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing citizens are able to communicate through the most appropriate method(s) under the circumstances;

15

      v.    to train all its employees, staff, agents and other personnel on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, and the AzDA;

D.    Award to Plaintiff:

      i.    compensatory damages pursuant to Section 504 of the Rehabilitation Act and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiff by Defendant;

      ii.    reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, and the AzDA;

      iii.    interest on all amounts at the highest rates and from the earliest dates allowed by law;

      iv.    any and all other relief that this Court finds just, necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 13th day of April, 2017.

        BASKIN RICHARDS PLC

        /s/ Nicole C. Davis
        William A. Richards
        Alan S. Baskin
        Nicole C. Davis
        David E. Wood
        Leslie Ross
        2901 N. Central Avenue, Suite 1150
        Phoenix, AZ  85012

        AND

        EISENBERG & BAUM, L.L.P.
        Eric Baum, Esq.
        Andrew Rozynski, Esq.
        24 Union Square East
        Fourth Floor
        New York, NY 10003

        *Attorneys for Plaintiff*

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800